FILED: 8/21/2023 1:28 PM
David Trantham
Denton County District Clerk
By: Jenny Hernandez, Deputy

23-7321-431

## CAUSE NO. _____

| | | |
|---|---|---|
| SECURUS TECHNOLOGIES, LLC, | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | DENTON COUNTY, TEXAS |
| | § | |
| DANIEL MCGUINN and SMART | § | |
| COMMUNICATIONS HOLDING, | § | |
| INC. | § | |
| | § | ____ JUDICIAL DISTRICT |
| **Defendants.** | | |

### PLAINTIFF'S ORIGINAL PETITION AND VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

Plaintiff Securus Technologies, LLC ("Securus") hereby files its Original Petition and Verified Application for Temporary Restraining Order and Injunctive Relief against Defendants Daniel McGuinn ("McGuinn") and Smart Communications Holding, Inc. ("Smart") (collectively, "Defendants") and respectfully shows as follows.

## I.
## SUMMARY OF CLAIMS & NEED FOR IMMEDIATE INJUNCTIVE RELIEF

Securus and Smart are private telecommunications companies that compete with one another for opportunities to provide telecommunications services to detention facilities located throughout the United States.  In the corrections industry, medium- to long-term exclusive contracts are won and lost at the bidding stage.  Industry participants like Securus and Smart thus devote substantial energy, time, and money to the development of their responses to requests for proposals ("RFPs") issued by State and County agencies that operate our nation's detention facilities.[1]

---

[1] *See* **Exhibit A**, Declaration of James Ciampaglio, at ¶ 8.

**PLAINTIFF'S ORIGINAL PETITION AND VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF**
**Page 1**

Copy from re:SearchTX

For approximately 14 years, Mr. McGuinn worked as a salesperson for Securus.  In that capacity, Mr. McGuinn helped lead Securus's efforts to develop these mission-critical responses to RFPs.  In that capacity, Mr. McGuinn was privy to Securus' highly confidential business plans, competitive strategies, costs, pricing information, commission plans, and a vast array of other proprietary information that Securus uses to compete with Smart and others for these exclusive contracts.  As of the time of his resignation last month, Mr. McGuinn had been actively working on Securus's efforts to win new business in multiple different competitive situations—including in at least three situations where *Smart* is known to be Securus's primary competition for the new business opportunities being issued under open RFPs.

Given his role, throughout his employment with Securus, Mr. McGuinn was subject to the terms and conditions of a written Non-Disclosure, Non-Compete, Non-Solicitation and Inventions Agreement (the "Agreement") that contained various restrictive covenants that survived termination of his employment.[2]  Well-aware of the non-competition, non-solicitation, and confidentiality obligations contained in the Agreement, Mr. McGuinn told his supervisors that he was resigning from Securus because he wanted to take some time off work.  Securus has since learned that Mr. McGuinn's representations were untrue.  Indeed, on August 11, 2023, Securus learned—for the first time—that Mr. McGuinn took a job with Smart almost immediately after resigning from Securus.  In the days since, Securus has also learned that Mr. McGuinn is now actively attempting to help Smart win business opportunities presented by the very same active and open RFPs for which—just weeks prior—Mr. McGuinn was leading Securus's efforts to compete.

By going to work for Smart—one of Securus's primary competitors—Mr. McGuinn has breached multiple restrictive covenants contained in his Agreement with Securus.  These

---

[2] **Exhibit A-1**, Agreement.

**PLAINTIFF'S ORIGINAL PETITION AND VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER - Page 2**

Copy from re:SearchTX

breaches, in turn, subject Securus to a risk of immediate and irreparable harm, including the loss of these irreplaceable business opportunities and the misuse/unlawful disclosure of Securus's confidential information and trade secrets to Smart.

Smart too bears liability for the harm caused by its decision to hire Mr. McGuinn.  There can be no real doubt behind Smart's motivations: Smart knows that it is actively competing with Securus for numerous open RFPs and wants to win those RFPs by exploiting Mr. McGuinn's knowledge of Securus' highly confidential business plans, competitive strategies, and pricing information.  Nor is there any doubt that Smart lacked knowledge of the contents of Mr. McGuinn's Agreement—to the contrary, in the lead up to his resignation, Mr. McGuinn e-mailed a copy of the Agreement to his personal e-mail account (presumably to give a copy to Smart),[3] and, when confronted about his breaches of the Agreement, Mr. McGuinn told Securus that Smart was providing him "protection" from the ramifications of his breaches.

Consequently, Securus now asks this Court to enter a Temporary Restraining Order that Orders Mr. McGuinn to comply with the terms of his Agreement until such time as a hearing on Securus' Application For Temporary Injunction can be held.  Securus further asks this Court to Order Smart to refrain from communicating with Mr. McGuinn about Securus and/or any open RFPs about which Mr. McGuinn has any information stemming from his years of employment at Securus.  Lastly, Securus asks this Court to order Mr. McGuinn and Smart to respond, on an expedited basis, to certain limited discovery requests that are directly related to the injunctive relief that Securus hereby seeks.

---

[3] **Exhibit A-2**, E-mail From McGuinn To McGuinn With Copy of Agreement.

**PLAINTIFF'S ORIGINAL PETITION AND VERIFIED APPLICATION
FOR TEMPORARY RESTRAINING ORDER - Page 3**

Copy from re:SearchTX

## II.
## DISCOVERY

1.      Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, Securus intends to conduct discovery under Level 3.

2.      Securus also requests expedited discovery prior to the temporary injunction hearing as set forth in Plaintiff's Motion for Expedited Discovery, filed contemporaneously herewith.

## III.
## PARTIES

3.      Securus Technologies, LLC, is a Delaware limited liability company with its headquarters and principal place of business at 4000 International Pkwy, Carrollton, Texas 75007.[4]  Plaintiff may be served with any notice or pleading in this action through its undersigned attorney of record.

4.      Defendant Daniel McGuinn is an individual domiciled in the State of Florida, residing at 5021 NW 112th Drive, Coral Springs, FL 33076.  McGuinn may be served with process at that address.

5.      Defendant Smart Communications Holding, Inc., is a Florida corporation with its principal place of business at 10491 72nd Street, Seminole, Florida 33777.  Smart provides various services to correctional facilities throughout the country, including within the State of Texas.

## IV.
## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to Tex. Civ. Prac. & Rem. Code § 65.021(a).

---

[4] Securus Technologies, LLC, is the successor in interest to Securus Technologies, Inc.

PLAINTIFF'S ORIGINAL PETITION AND VERIFIED APPLICATION
FOR TEMPORARY RESTRAINING ORDER - Page 4

Copy from re:SearchTX

7.      Securus is a limited liability company with its headquarters and principal place of business in Carrollton, Texas.

8.      This Court has personal jurisdiction over Mr. McGuinn pursuant to Texas's Long Arm Statute because (1) he contracted with a Texas resident (i.e., Securus), and the contract was to be performed in whole or in part in Texas; (2) he has committed a tort in whole or in part in Texas; and/or (3) he purposefully established minimum contacts with Texas.  *See* Tex. Civ. Prac. & Rem. Code § 17.042.  Further, Mr. McGuinn has travelled to Texas as part of his employment with Securus, including for trainings, meetings, and other work-related obligations.  This Court has personal jurisdiction over Smart because Smart has likewise purposefully established minimum contacts with Texas, including by doing business within the State of Texas.  For example, Smart recently beat out Securus for an award of new business in Brazoria County, Texas, where it is currently the provider of telecommunications services.

9.      Venue in this district is proper pursuant to Tex. Civ. Prac. & Rem. Code § 15.002(a) because all or a substantial portion of the events or omissions giving rise to the claims occurred in this district and because Securus resided in Denton County at the time of the accrual of the causes of action.

10.     Securus seeks monetary relief over $1,000,000 and non-monetary relief. The amount in controversy is within the jurisdictional limits of the Court.

## V.
## FACTUAL BACKGROUND

### A.      *Securus Is a Telecommunications Company Servicing Detention Facilities and Incarcerated Individuals*

11.     Securus is one of the largest independent providers of collect, prepaid, and debit calling services to local, county, state and private correctional facilities in the United States.  Its mission is to connect family and friends to incarcerated through various communications

Copy from re:SearchTX

services.[5]  In many facilities, Securus also provides incarcerated individuals with tablets through which they can purchase media (e.g., movies, music, etc.).  These services, in turn, lead to safer detention center conditions, better results for incarcerated individuals upon release, and reduced recidivism.

12.    The Agreement between Mr. McGuinn and Securus described Securus's business as: "(i) the inmate telephone, communications and information business, (ii) the business of selling, leasing or otherwise providing law enforcement management systems, offender management systems and/or other tracking or records management systems to correctional or community corrections facilities and/or agencies, (iii) the billing, collection and/or validation business within the correction and law enforcement industry, (iv) the business of selling, leasing or otherwise providing corrections market and law enforcement industry products, systems, applications and/or solutions which provide value to such entity's safety and/or operations, and (v) as a software development and marketing company that supplies automate case management solutions and corrections information to government agencies."[6]

### B.    The Agreement Restricts Mr. McGuinn from Competing With Securus and from Misusing Securus's Confidential Information Post-Resignation

13.    Mr. McGuinn began working for Securus in March 2009.  In connection with his employment, McGuinn signed a Sales Compensation Plan, dated March 2, 2009.[7]

14.    Around that same time, Mr. McGuinn also entered into a Non-Disclosure, Non-Compete, Non-Solicitation and Inventions Agreement (defined above as the "Agreement").  In the Agreement, Mr. McGuinn acknowledged that he would receive "Confidential Information" from Securus as part of his job and in consideration of the additional compensation set forth in

---

[5] *See* Exhibit A at ¶ 8.
[6] **Exhibit A-1** at ¶ 3.
[7] *See* Exhibit A at ¶ 9.

Copy from re:SearchTX

the Sales Compensation Plan.[8]   The Agreement defined "Confidential Information" as "any [Securus] proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of [Securus] on whom [McGuinn] called or with whom [McGuinn] became acquainted during the term of employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finance or other business information disclosed to [McGuinn] by [Securus] either directly or indirectly, in writing, orally, by drawings, or by [McGuinn's] observation of parts or equipment."[9]

15.    In exchange for this valid consideration, which Mr. McGuinn acknowledged was sufficient, Mr. McGuinn agreed to certain restrictive covenants.[10]   Specifically, Mr. McGuinn agreed that "for a period of twenty-four (24) months immediately following his termination of employment with Securus, for whatever reason, whether with or without cause," that he would not:

> Directly or indirectly work for, be employed by, provide consulting or advice to, derive benefit from, or otherwise provide services to, any of the Company's direct competitors [. . .][11]

> Directly or indirectly work for, be employed by, own, manage, participate or engage in, any company, firm, entity, corporation, partnership, limited liability company, or business which engages in any business which is substantially the same as or competitive with the [Securus'] [b]usiness, and which is located anywhere within a 100-mile radius of the geographic area (a) where [McGuinn] works; (b) which is served by [McGuinn] for [Securus]; or (c) where the principal executive offices of [Securus] and its parent are located (the "Territory");[12]

---

[8] Exhibit A-1, Recitals.
[9] Exhibit A-1 at ¶ 2(a).
[10] Exhibit A-1 at ¶ 2, 3, and 4.
[11] Exhibit A-1 at ¶ 3(i).
[12] Exhibit A-1 at ¶ 3(ii).

**PLAINTIFF'S ORIGINAL PETITION AND VERIFIED APPLICATION
FOR TEMPORARY RESTRAINING ORDER – Page 7**

Copy from re:SearchTX

> Do any act that [McGuinn] knew or reasonably should have known might directly injure [Securus] or its affiliates in any material respect or that might divert customers, suppliers or employees from [Securus] or its affiliates;[13]
>
> Use in any competition, solicitation, or marketing effort any Confidential Information or proprietary list, any information concerning customers of [Securus] or any Invention or works made for hire; and/or[14]
>
> [C]onduct a business substantially similar to [Securus'] [b]usiness under any trade names, trademarks or service marks heretofore used by [Securus] or its affiliates.[15]

16.    Mr. McGuinn also promised that "for a period of twenty-four (24) months immediately following the termination of employment with [Securus], for whatever reason, whether with or without cause," that "neither [he] nor any individual, partner(s), limited partnership, corporation or other entity or business with which [he] is in any way affiliated" would:

> [S]olicit, induce, recruit, encourage, request, or attempt to influence, directly or indirectly, any employee of [Securus] to terminate their employment with [Securus]; or
>
> [E]mploy, hire, or take away any employee of [Securus], either for [himself] or for any other person or entity."[16]

17.    Mr. McGuinn further agreed:

> [McGuinn] agrees at all times during the term of employment and thereafter, to hold in the strictest confidence, and to not use, except for the benefit of [Securus], or to not disclose to any person, firm or corporation without written authorization of the CEO of [Securus], any Confidential Information of [Securus]. [McGuinn] further agrees that, [McGuinn] will not, during [his] employment, divulge to any person, directly or indirectly, except to [Securus] or its officers and agents or as reasonably required in connection with [McGuinn's] duties on behalf of [Securus], or make any independent use of, except on behalf of [Securus], any Confidential Information acquired by [McGuinn] during his employment. [McGuinn] further agrees that [McGuinn] will not, at any time after [his] employment has ended (for whatever reason), use or divulge to any person

---

[13] Exhibit A-1 at ¶ 3(iv).
[14] Exhibit A-1 at ¶ 3(v).
[15] Exhibit A-1 at ¶ 3(vi).
[16] Exhibit A-1 at ¶ 4.

Copy from re:SearchTX

directly or indirectly any Confidential Information, or use any Confidential Information in subsequent employment of any nature.[17]

### C.    Mr. McGuinn's Employment with Securus

18.    From March 2009 through July 31, 2023, Mr. McGuinn was employed by Securus as a salesperson, including as an Advisory Account Executive. During these years, Mr. McGuinn's responsibilities were far-reaching and touched every part of Securus' competitive bidding process, particularly with respect to responding to RFPs. Mr. McGuinn's responsibilities included, among other things, developing responses to RFPs and making formal presentations to actual and potential Securus clients within the United States—particularly throughout the Southern and Eastern portions of the country.[18]

19.    As a necessary part of his job, Mr. McGuinn was made privy to Securus' confidential business plans, bidding strategies, and pricing information—including with respect to open and active RFPs.[19] This information is highly confidential and competitively sensitive; indeed, were Securus's competitors to learn its confidential bidding strategies, they could readily undercut and/or outbid Securus in order to secure the medium- and long-term exclusive contracts offered under the various open RFPs.

20.    By way of example only, and without limitation of the numerous other instances in which Mr. McGuinn has been made privy to Securus' confidential information, as of the time of his departure from Securus, Mr. McGuinn was actively working on Securus's responses to RFPs issued by Hillsborough, Collier, and Charlotte Counties in Florida.[20] The counties that issued these RFPs have not yet decided which company will be chosen as the victor, but Securus is aware that Smart is one of Securus' primary competitors for the new business opportunities in

---

[17] Exhibit A-1 at ¶ 2(a).
[18] *See* Exhibit A at ¶ 11.
[19] *See id.* at ¶ 12.
[20] *See id.* at ¶ 12.

Copy from re:SearchTX

all three of these counties.[21]  Mr. McGuinn knows exactly how Securus is planning to win these new business opportunities, and he has now put himself in a position to share those plans with Securus's primary competition: Smart.

### D.    Mr. McGuinn's Resignation From Securus And Breaches of the Agreement

21.    On July 31, 2023, McGuinn resigned from his job at Securus, after holding a sales position for approximately 14 years at Securus.[22]  At the time of his resignation, Mr. McGuinn informed Securus that he was going to be taking some time off from work.  He said nothing about any intent to begin work almost immediately thereafter for Smart—a direct competitor of Securus.[23]

22.    Yet, on August 11, 2023, Securus representatives saw Mr. McGuinn wearing a Smart-logoed shirt while working at a Smart sales booth at the American Corrections Association Conference.  That same day, one Securus employee, James Ciampaglio, confronted Mr. McGuinn in front of the host hotel regarding his blatant violation of his non-compete obligations.  During a conversation with Mr. Ciampaglio, Mr. McGuinn acknowledged that he owed Securus non-compete obligations and that he had in fact nonetheless taken a job from Smart.  Mr. McGuinn further indicated that he had "protection" from the adverse legal implications of that decision via some sort of arrangement with Smart.[24]

23.    Following this August 11th encounter with Mr. McGuinn, Securus immediately began conducting an investigation into Mr. McGuinn's conduct.[25]  Through its investigation, Securus has learned that Mr. McGuinn, during the last year of his employment with Securus, was

---

[21] *Id.* at ¶ 12.
[22] *Id.* at ¶ 13.
[23] *Id.*
[24] *Id.* at ¶ 14.
[25] *Id.* at ¶ 15.

Copy from re:SearchTX

frequently updating his resume, sending it to his personal email address, and looking for new jobs, including but not limited to via LinkedIn.[26]

24.    Securus has further learned that, in the month before he left Securus, Mr. McGuinn **emailed his confidential commission statements to his personal email account**.[27]

25.    Moreover, Securus' Mr. Ciampaglio has since spoken with another Smart representative who told him that Mr. McGuinn would likely attend the walk-through at Collier County—one of the counties with an open RFP—in two weeks.  This was an account that Mr. McGuinn had worked on for Securus prior to his departure from Securus.[28]

### E.    *Mr. McGuinn Continues to Breach His Obligations Under the Agreement*

26.    On August 17, 2023, Securus sent Mr. McGuinn and Smart a cease-and-desist letter requesting that they stop violating, or interfering with, the obligations Mr. McGuinn owed to Securus under the Agreement and that they provide certain written assurances.[29]  In particular, Securus asked Mr. McGuinn and Smart to provide the following:

(1)    written confirmation by Mr. McGuinn and Smart that each will preserve all documents and communications (whether stored electronically or in hard copy) that relate in any way to Mr. McGuinn's Agreement, Mr. McGuinn's prior employment by Securus, Smart's hiring of Mr. McGuinn, along with each and every communication between Mr. McGuinn and anyone at Smart;

(2)    written confirmation signed by Mr. McGuinn confirming that he currently possesses no Confidential Information (as defined in the Agreement) belonging to

---

[26] Id. at ¶ 16; Exhibit A-2, E-mail From McGuinn To McGuinn With Copy of Agreement.
[27] *Id.* at ¶ 17; **Exhibit A-3**, Email to Self.
[28] *Id.* at ¶ 18.
[29] *See* **Exhibit B**, August 17, 2023 Cease-and-Desist Letter.

Copy from re:SearchTX

Securus; or, in the alternative, a detailed list of all Confidential Information that Mr. McGuinn continues to retain;

(3)    written confirmation by both Smart and Mr. McGuinn that Mr. McGuinn has had no role in Smart's efforts to compete with Securus for any new business opportunities within the State of Florida, including with respect to the open RFPs from Hillsborough County, Charlotte County, and Collier County; or, in the alternative, a detailed description of the role that Mr. McGuinn has taken to assist Smart with its efforts to compete for such business opportunities;

(4)    written confirmation from Smart and Mr. McGuinn confirming that, from today forward, Mr. McGuinn will not engage in any business on behalf of Smart that is substantially the same as or in any way competitive with Securus' business anywhere within a 100-mile radius of the geographic areas where Mr. McGuinn worked on behalf of Securus, including, without limitation, within the States of Florida, New York, and/or Georgia;

(5)    written confirmation that Mr. McGuinn has not provided, orally or in writing, any information about Securus' business plans, bidding strategies, pricing, or other non-public information related to Securus' efforts to compete for new business opportunities; or, in the alternative, a detailed list of all such information that Mr. McGuinn has provided to Smart; and

(6)    written confirmation that Mr. McGuinn will comply with the balance of his obligations under the Agreement from today forward.

27.    On August 18, 2023, Securus received a letter from Smart's outside counsel.  The letter stated that Smart is investigating the situation, but it provided no written assurances of any

Copy from re:SearchTX

kind.[30]  Securus received no response from any attorney indicating expressly that he or she was representing Mr. McGuinn individually.

## VI.
## CAUSES OF ACTION

### Count 1:  Breach of Contract (Mr. McGuinn)

28.    Securus re-alleges and incorporates by reference the allegations set forth above.

29.    Mr. McGuinn entered into and agreed to the Agreement as more particularly described above.

30.    The Agreement is a valid and existing agreement between Securus and Mr. McGuinn.

31.    Securus has performed or tendered performance of its contractual obligations under the terms of the Agreement.

32.    Mr. McGuinn received good and valuable consideration for the Agreement, which included the additional compensation set forth in his Sales Compensation Plan, dated March 2, 2009, and Securus's provision to him of trade secrets, confidential information, and proprietary information that enabled him to carry out his duties.

33.    In exchange for this consideration, Mr. McGuinn agreed to several restrictive covenants, including non-disclosure and non-competition obligations.

34.    Mr. McGuinn has breached his non-disclosure and non-competition obligations, as he now works directly for a competitor of Securus, and upon information and belief, is working on Smart's responses to RFPs  issued by the same counties on which he was previously working for Securus.

35.    All conditions precedent have been performed or have occurred.

---

[30] *See* **Exhibit C**, August 18 Response from Smart.

Copy from re:SearchTX

36.     Through his breaches, Mr. McGuinn has and will continue to proximately cause harm to Securus.

37.     Securus is entitled to damages caused by Mr. McGuinn's breaches in an amount to be determined at trial.

38.     Securus is also entitled to injunctive relief preventing Mr. McGuinn from further violations of the Agreement, as set forth below.

**Count 2:  Violation of the Texas Uniform Trade Secrets Act (Mr. McGuinn and Smart)**

39.     Securus re-alleges and incorporates by reference the allegations set forth above.

40.     Securus maintains and develops valuable trade secrets and other confidential and propriety information that are safeguarded as confidential, secret, and protected from direct or indirect disclosure.

41.     Securus' trade secrets and other confidential and propriety information are valuable and critical to Securus' business operations.

42.     Securus' trade secrets include, but are not limited to, bidding strategies, business methods, techniques, devices, upstream and downstream pricing, processes, and other strategies related to new business opportunities.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6). Securus derives economic value from its trade secrets not being generally known to, or readily ascertainable by proper means by, other persons who can receive economic value from their disclosure.

43.     The Texas Uniform Trade Secrets Act recognizes the protection of a company's trade secrets against actual or threatened misappropriation and provides that actual or threatened misappropriation may be enjoined and that damages may be awarded.

Copy from re:SearchTX

44.    Mr. McGuinn's and Smart's conduct constitutes the actual or threatened misappropriation, misuse, or inevitable reliance upon Securus' confidential, proprietary, and trade secret information.

45.    Securus provided Mr. McGuinn access to Securus's trade secrets and other confidential and proprietary information during his work for Securus for the limited purpose of furthering Securus' legitimate business interests, particularly as it relates to Securus's responses to RFPs.

46.    Mr. McGuinn and Smart are now in a position to use or further disclose Securus' information for a purpose other than advancing Securus' business interests.

47.    Mr. McGuinn's and Smart's actions expose Securus to the use or disclosure, threatened use or disclosure, inevitable use or disclosure, or probable use or disclosure of Securus' valuable trade secrets and other confidential and proprietary information.

48.    Mr. McGuinn and Smart have used Securus' trade secrets and confidential and proprietary information on his behalf, on Smart's behalf, or others to provide competing services, which have caused damage to Securus.

49.    Unless Mr. McGuinn and Smart are enjoined from disclosing and utilizing Securus's trade secrets, and confidential and proprietary information, Securus will continue to be immediately and irreparably harmed because other companies have obtained and used, and will continue to obtain and use, Securus's information that is not generally known to the public.

50.    Mr. McGuinn is in a position to—if he has not already done so—use Securus's trade secrets and confidential and proprietary information to his and Smart's economic advantage and to Securus' detriment.

Copy from re:SearchTX

51.    Securus has taken reasonable precautions to preserve the secrecy of the trade secrets to which Mr. McGuinn had access and of which Mr. McGuinn had knowledge of while working for Securus.

52.    Mr. McGuinn's and Smart's actual or threatened misappropriation of Securus' trade secrets and confidential and proprietary information is and was willful and malicious. Smart was and is fully aware of McGuinn's non-compete agreement with Securus, but chose to hire him anyway, offering him legal protection, as further described herein.

53.    As a direct and proximate result of Mr. McGuinn's and Smart's misappropriations, Securus has suffered, and will continue to suffer, substantial loss and damages.  In addition, Securus has suffered, and will continue to suffer, irreparable harm and an ongoing threat of irreparable harm for which Securus has no adequate remedy at law, as a result of Mr. McGuinn's and Smart's actual or threatened misappropriation.

54.    The Texas Uniform Trade Secrets Act permits injunctive relief to enjoin "[a]ctual or threatened misappropriation."  *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.003(a); *see also Hill v. McLane Co.*, No. 03-10-00293, 2011 WL 56061, at *5 (Tex. App.–Austin 2011, no pet.) ("Because the very purpose of the injunction is to prevent disclosure of trade secrets pending trial, plaintiffs need not demonstrate prior to a trial on the merits that a trade secret has actually been misappropriated. Instead, harm to the trade secret owner may be presumed when a defendant possesses trade secrets and is in a position to use them." (internal quotation marks omitted)); *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 860 (Tex. App.–Fort Worth 2003, no pet.) (same).

55.    In addition, injunctive relief may include affirmative acts to protect a trade secret. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.003(c).

Copy from re:SearchTX

56.     Securus also requests recovery of its attorneys' fees from Defendants.

**Count 3:  *Tortious Interference with Contractual Relations (Smart)***

57.     Securus re-alleges and incorporates by reference the allegations set forth above.

58.     A valid agreement exists between Securus and Mr. McGuinn.

59.     Upon information and belief, Smart has actual knowledge of Mr. McGuinn's obligations under the Agreement, including the non-compete and non-disclosure obligations.

60.     Smart has intentionally and improperly interfered with the contractual relationship between Securus and Mr. McGuinn, in part by continuing to employ him and encouraging him to violate the terms of the Agreement, particularly as it relates the counties in which Securus and Smart compete for business.

61.     Smart's interference has caused Securus injury and benefitted Smart.

62.     Securus is entitled to damages caused by Smart's breaches in an amount to be determined at trial.

63.     Securus is also entitled to injunctive relief preventing Smart from further violations of the Agreement, as set forth below.

**VII.**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION**

64.     Securus re-alleges and incorporates by reference the allegations set forth above.

65.     Injunctive relief may be granted if the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant.  *See* Tex. Civ. Prac. & Rem. Code § 65.011.

66.     Injunctive relief may also be granted to protect trade secrets and confidential and proprietary information.  *See, e.g.*, *Halliburton Energy Servs., Inc. v. Axis Techs., LLC*, 444 S.W.3d 251, 257 (Tex. App.–Dallas 2014, no pet.) ("The purpose of an injunction is to remove

Copy from re:SearchTX

the advantage created by the misappropriation."); *Rugen v. Interactive Bus. Sys., Inc.,* 864 S.W.2d 548, 551 (Tex. App.–Dallas 1993, no writ) ("Injunctive relief is recognized as a proper remedy to protect confidential information and trade secrets."); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 134A.003(a).

### A.    Mr. McGuinn's and Smart's Wrongful Acts Provide Securus with a Cause of Action

67.    Securus is entitled to a temporary restraining order and injunction against Mr. McGuinn and Smart because Securus's pleading demonstrates that (1) Mr. McGuinn and Smart have engaged in wrongful acts that provide Securus with multiple valid causes of action; (2) Securus has a probable right to the relief it seeks; and (3) Securus will suffer probable injury for which there is no adequate remedy at law. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

### B.    Securus Has a Probable Right to Relief

68.    Securus is entitled to injunctive relief because it can demonstrate a probable right to relief upon a final hearing. At this stage, Securus need not prove that it will ultimately prevail at trial to demonstrate a probable right to relief. *Walling v. Metcalfe*, 863 S.W. 2d 56, 58 (Tex. 1993).

69.    As fully alleged above, Mr. McGuinn is violating the covenant not to compete and covenant of confidentiality that he agreed to in his Agreement.

70.    Texas law governs the enforceability of the Agreement. *See* Exhibit A-1 at § 12 ("THIS AGREEMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT GIVING EFFECT TO ANY PRINCIPLE OF CONFLICT-OF-LAWS THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION.") (emphasis in original).

---

Copy from re:SearchTX

71.     Under Texas law, "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise."  Tex. Bus. & Com. Code Ann. § 15.50; *see also Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 465 (5th Cir. 2003).

### 1.     The Covenant Not to Compete Is Ancillary To or a Part of an Otherwise Enforceable Agreement

72.     Here, the Agreement is ancillary to an otherwise valid contract—namely, the Sales Compensation Plan, dated March 2, 2009, that existed at the time the non-compete Agreement was signed, as well as to the employment relationship between Mr. McGuinn and Securus.  *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681-82 (Tex. 1990) (covenant not to compete is reasonable if it is "ancillary to an otherwise valid transaction or *relationship* … . includ[ing] … employment *relationships*") (emphasis added); *see also Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 566 (S.D. Tex. 2014) ("covenant not to compete is ancillary to an otherwise enforceable agreement because [employer] promised to provide [employee] with access to confidential information in exchange for [employee's] promise not to compete, and did provide such access").

### 2.     The Duration and Geographic Scope of the Restrictive Covenants Are Reasonable

73.     Here, the duration of the restrictive covenants to which Mr. McGuinn agreed is twenty-four (24) months from the termination of his employment with Securus, which Texas courts have found to be reasonable.  *See e.g., Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 790–91 (Tex.App.-Houston [1st Dist.] 2001) (two years is reasonable); *Property Tax Assocs., Inc. v. Staffeldt*, 800 S.W.2d 349, 351 (Tex. App.-El Paso 1990) (two years is

Copy from re:SearchTX

reasonable); *see Salas v. Chris Christensen Sys., Inc.*, No. 10-11-00107-CV, 2011 WL 4089999, at *18-20 (Tex. App.—Waco Sept. 14, 2011, no pet.) (five year restraint was reasonable against former employee).

74.    Likewise, the geographic scope of the restrictive covenants to which Mr. McGuinn agreed is reasonable. He is prohibited from working for direct competitors and from working within a 100-mile radius for any business that is substantially the same as or competitive with Securus. *See Investors Diversified Servs. v. McElroy*, 645 S.W.2d 338 (Tex. Ct. App.—Corpus Christi 1982, no writ) (restriction covering any customer which the former employee dealt with or contacted while employed by former employer); *see Eberts v. Businesspeople Pers. Servs.*, 620 S.W.2d 861, 862, 863 (Tex. Civ. App.—Dallas 1981, no writ) (100-mile radius is reasonable); *see Williams v. Powell Elec. Mfg. Co.*, 508 S.W.2d 665, 668 (Tex. App.—Houston [14th Dist.] 1974, no pet.) (enforcing 5-year national restriction); *Daily Instruments Corp.*, 998 F. Supp. 2d at 558 (granting injunction against employee when employee violated restrictive covenant of 24 months in duration by working for a direct competitor).

### 3.    *The Restrictive Covenants Advance Securus's Legitimate Business Interests*

75.    Legitimate interests recognized by Texas law include protection of business goodwill and confidential or proprietary information. *Alex Sheshunoff Mgmt. Services, L.P. v. Johnson*, 209 S.W.3d 644, 649 (Tex. 2006). Here, Mr. McGuinn expressly acknowledged in the Agreement that he "recognizes and understands that the business of [Securus] is dependent upon such Confidential Information and the protection of the Confidential Information against unauthorized disclosure or use[.]"[31]

---

[31] Exhibit A-1 at § 2(a).

Copy from re:SearchTX

76.    Accordingly, because (1) the non-compete provisions are ancillary to or part of an otherwise enforceable agreement, (2) the duration and geographic scope are reasonable, and (3) the duration and geographic scope does not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise, the restrictions contained in the Agreement are enforceable under Texas law.

### C.    *Securus Will Suffer Probable Injury with No Adequate Remedy at Law*

77.    If not enjoined from such unauthorized, wrongful, and tortious conduct, Defendants will directly and proximately cause great and irreparable injury to Securus, which cannot be adequately measured or compensated by money damages.   As noted above, the core purpose of Smart's scheme in hiring Mr. McGuinn is to use Mr. McGuinn's knowledge of Securus's trade secrets and confidential information to better position Smart to win business from those counties where Smart and Securus are actively bidding for medium- and long-term exclusive contracts.  Unless enjoined, it is more likely than not that Smart will, in fact, exploit Mr. McGuinn's knowledge of this information to secure the business, thereby locking Smart in as the provider-of-choice for these counties for years to come.  Due to the inherent difficulty of measuring the damages Securus has incurred and will continue to incur under these circumstances, injunctive relief is required to adequately limit its damages and to prevent future injury.

78.    Securus has no adequate remedy at law due to the continuing nature of the damages and the extreme difficulty inherent with quantifying the damages in monetary terms. *See, e.g.*, *T–N–T Motorsports, Inc. v. Hennessey Motorsports*, 965 S.W.2d 18, 24 (Tex. App.– Houston [1st Dist.] 1998, no pet.).  In addition, the threatened disclosure of trade secrets

Copy from re:SearchTX

constitutes irreparable injury as a matter of law. *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 471 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.).

79.    Unless immediately restrained, Mr. McGuinn and Smart will continue to cause irreparable harm to Securus for which there is no adequate remedy at law, including (without limitation) loss of confidential information, trade secrets, goodwill, business reputation, employment relationships, and customer relationships. *See Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 427 (Tex. App.—Houston [14th Dist.] 2007, no pet.).    Further, should Mr. McGuinn's conduct go unabated, he will continue to use or disclose Securus's confidential information and trade secrets, unfairly compete against Securus, and solicit its customers, for the benefit of Smart.

80.    The injunctive relief sought by Securus will not adversely affect public policy or the public interest.

81.    Therefore, Securus requests that this Court issue a Temporary Restraining Order, and thereafter, a Temporary Injunction and Permanent Injunction, that restrains Mr. McGuinn and Smart from the following:

(a)    Mr. McGuinn is ordered to refrain from communicating with Smart regarding Securus and from providing Smart with any Confidential Information (as defined in the Agreement) belonging to Securus;

(b)    Smart is ordered to refrain from communicating with Mr. McGuinn regarding Securus and any Confidential Information (as defined in the Agreement) belonging to Securus;

(c)    Mr. McGuinn and Smart are ordered to refrain from any communication among themselves regarding any open RFP for any new business opportunity located within any state in which Mr. McGuinn previously worked for Securus, including within the States of Florida, New York, Virginia, and Georgia.

(d)    Mr. McGuinn is ordered to refrain from engaging in any business that is substantially the same as or in any way competitive with Securus' business anywhere within a 100-mile radius of the geographic areas

Copy from re:SearchTX

where Mr. McGuinn worked on behalf of Securus, including, without limitation, within the States of Florida, New York, Virginia, and/or Georgia.

(e)     Mr. McGuinn and Smart are ordered to preserve all documents and communications (whether stored electronically or in hard copy) that relate in any way to McGuinn's Agreement, Mr. McGuinn's prior employment by Securus, Smart's hiring of Mr. McGuinn, along with each and every communication between Mr. McGuinn and anyone at Smart.

(f)     Mr. McGuinn and Smart are restrained from directly or indirectly altering, modifying, tampering with, removing, deleting, or destroying any Confidential Information or trade secrets that are now or were in Mr. McGuinn's possession, custody, or control, including information stored on any computer or other electronic or digital storage device or on any cloud application or web-based file repository.

(g)     Mr. McGuinn is otherwise ordered to comply with all other obligations, terms and conditions of his Agreement.

82.     A temporary restraining order should issue *ex parte*, if necessary.  If, after notice to Mr. McGuinn, he does not appear and respond to the application for injunctive relief, the Court should grant the requested injunction.  Securus will suffer irreparable injury, loss, or damage if injunctive relief is not immediately granted.

83.     Accordingly, Securus requests that the court set its application for temporary injunction for a hearing, and after hearing the application, issue a temporary injunction against Defendants.

### VIII.
### REQUEST FOR TEMPORARY INJUNCTION AND HEARING

84.     Securus re-alleges and incorporates by reference the allegations in the foregoing paragraphs.

85.     Securus requests that the Court set its application for temporary injunction for hearing within 14 days of the issuance of a temporary restraining order (or a longer period of time if agreed to by the Parties) and, after a hearing is held, issue a temporary injunction

---

Copy from re:SearchTX

concerning all matters identified in its application for a temporary restraining order in order to avoid immediate and irreparable injury and harm for which there is no other adequate remedy at law.

86.     Accordingly, Securus requests that the court set its application for temporary injunction for a hearing, and after hearing the application, issue a temporary injunction against Defendants.

## IX.
## REQUEST FOR PERMANENT INJUNCTION

87.     Securus re-alleges and incorporates by reference the allegations in the foregoing paragraphs.

88.     Securus requests that, following a trial on the merits, the Court issue a permanent injunction regarding all matters identified in its application for a temporary restraining order.

## X.
## UNJUST ENRICHMENT

89.     Mr. McGuinn has been unjustly enriched through the unlawful conduct described above.  Any income or revenue Mr. McGuinn received and all those acting in concert with him as a result of Mr. McGuinn's wrongful conduct should be placed in a constructive trust and paid to Securus.

## XI.
## ALTERNATIVE REFORMATION

90.     In the alternative, in the event the Court finds any part of the restrictive covenants to be too broad to be enforced, or otherwise unenforceable, Securus requests the Court to reform that restriction, if any, so as to make the restriction enforceable to the maximum extent allowed by law.

Copy from re:SearchTX

## XII.
## CONDITIONS PRECEDENT

91.    All conditions precedent necessary have been performed or have occurred to entitle Securus to the relief it seeks.

## XIII.
## JURY DEMAND

92.    Securus demands a trial by jury on all issues so triable and has tendered the appropriate fee.

## XIV.
## PRAYER

WHEREFORE, Plaintiff Securus respectfully prays that citation be issued for said Defendants and that the Court enter judgment against Defendants for the following:

a)    Temporary and permanent injunctions as specified above, including tolling the restricted periods during the time Mr. McGuinn was and is in breach of his restrictive covenants;

b)    Actual damages;

c)    Punitive and exemplary damages in an amount that is reasonable and necessary to punish Mr. McGuinn and Smart for their willful, malicious, and wrongful conduct and to deter future misconduct;

d)    Attorneys' fees, costs, expert witness fees, filing fees, and expenses;

e)    Pre-judgment and post-judgment interest at the highest rate allowed by law on all amounts awarded here; and

f)    Such other and further relief the Court may deem proper.

Copy from re:SearchTX

Dated: August 21, 2023

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

/s/ *Barton W. Cox*

Barton W. Cox
State Bar No. 24065087
beau.cox@nortonrosefulbright.com
Kira Latham
State Bar No. 24120638
kira.latham@nortonrosefulbright.com

2200 Ross Avenue, Suite 3600
Dallas, TX  75201
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200

**ATTORNEYS FOR PLAINTIFF
SECURUS TECHNOLOGIES**

Copy from re:SearchTX